**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 15-cv-01385-CMA

ROBERT C.T. VINE,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING THE DENIAL OF BENEFITS**

---

This matter is before the Court on review of the Commissioner's decision denying Plaintiff Robert C.T. Vine's application for disability benefits. Jurisdiction is proper under 42 U.S.C. § 405(g).

Plaintiff raises three issues in his opening brief: (1) the administrative law judge ("ALJ") failed to consider properly the combined effect of all of Plaintiff's severe and nonsevere impairments as required by 20 C.F.R. § 404.1545; (2) the ALJ's evaluation of the credibility of Plaintiff's subjective complaints is not supported by substantial evidence; and (3) the ALJ's step five determination is not supported by substantial evidence. For the reasons that follow, the Court finds Plaintiff's arguments to be without merit and, therefore, affirms the August 8, 2013 written decision of the ALJ.

## I. BACKGROUND

Plaintiff was born on July 5, 1968.  (AR at 139.)[1]  Plaintiff earned an Associate's Degree in Hotel and Restaurant Management and primarily worked as a cook in the food service industry.  (AR at 50, 163, 171.)

In May 2012, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning April 5, 2008.  (AR at 30, 67.)  In his disability report, Plaintiff states that he suffers from the following physical conditions: neuropathy, lumbar disc disease, diabetes, meralgia paresthetica, and chronic pain.  (AR at 162.)  In his function report, Plaintiff states that he "cannot stand for long periods of time or walk a long way at one time."  (AR at 184.)  In addition, Plaintiff states that his "leg is very weak" and that he experiences "pain when [he] sit[s] for long periods."  (AR at 184.)  Plaintiff describes a typical day as follows: "take medication, drink coffee, sit at the computer, do dish[es], take shower, fix breakfast, take more medication, lay down, read, fix lunch, finish dishes, watch TV, help fix dinner."  (AR at 185.)  With regard to household chores, Plaintiff states that he is able to prepare meals and do laundry and dishes.  (AR at 186.)  Plaintiff states that he cannot do yard work because he "cannot stand for long periods of time."  (AR at 187.)  Plaintiff states that he goes outside "once a day" and that he is able to drive.  (AR at 187.)  Plaintiff is able to shop for food and clothing, pay bills, count change, handle a savings account, and use a checkbook/money orders.  (AR at 187.)

---

[1] The Court refers and cites to the Administrative Record in this matter, located at Doc. # 10, as "AR."

In his personal pain questionnaire, Plaintiff states that he experiences "left thigh pain" and that this pain is worse when he is "standing, walking, [and] sitting in [the] same position for long periods." (AR at 192.) Plaintiff states that he experiences this pain "almost every day" and that, when he experiences this pain, it is "constant." (AR at 192.)

Plaintiff's application was initially denied on September 27, 2012. (AR at 30.) On October 2, 2012, Plaintiff filed a written request for a hearing before an ALJ. (AR at 30.) That hearing took place on July 25, 2013, in Denver, Colorado before ALJ James W. Olson. (AR at 30.) Plaintiff was represented by attorney Peter McGuire at the hearing. (AR at 30.) At the beginning of the hearing, Plaintiff amended the alleged onset date of his disability to September 14, 2011. (AR at 49.)

At the hearing, Plaintiff provided the ALJ with the following information. Plaintiff stopped working in 2008 because he "headed back to school to finish up [his] culinary degree and study abroad." (AR at 52.) In 2011, Plaintiff "took a terrible fall" and "jammed [his] muscles into [his] femoral artery." (AR at 52.) According to Plaintiff, this "[c]reated extreme pressure on standing [sic] for long periods of time" and "extreme pain." (AR at 52.) Plaintiff stopped working after the fall because it was "too painful" to stand for long periods of time and his work as a cook did not allow him to "stop and sit" when he needed to. (AR at 52.) Plaintiff stated that he can stand for only "20 [or] 30 minutes" at a time and that on "a good day" he can walk "about three blocks" and on "a bad day . . . maybe a block at the most." (AR at 53.) Plaintiff also states that he "can't sit for long periods of time" because he gets "cramp[s] and [his] legs start act[ing] up."

3

(AR at 54.) When this occurs, he has to "get up and go for a little walk and stretch or go lay down for a while just to relax." (AR at 54.) Plaintiff has received treatment at the University of Colorado Hospital. (AR at 54.) He has not had surgery, but he has received approximately six to eight steroid injections "to help control the pain and relieve the tension." (AR at 54, 55.) After receiving an injection, Plaintiff is relieved of his pain for a period of one to three weeks. (AR at 55.)

On August 8, 2013, the ALJ issued a written decision in which he concluded that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. (AR at 43.) The ALJ found that Plaintiff has the following severe impairments: type II diabetes mellitus; peripheral neuropathy; meralgia paresthetica in his left thigh; degenerative disc disease and facet joint arthropathy in his lumbar spine; degenerative disc disease and facet joint arthropathy in his thoracic spine; chondrocalcinosis and osteopoikilosis in his left knee; pes equinus and hallux rigidus in his bilateral feet; and obesity. (AR at 32.) The ALJ found that Plaintiff has the following non-severe impairments: gastroesophageal reflux disease ("GERD"); diabetic nephropathy with secondary proteinuria; monoclonal gammopathy; mild bilateral cataracts and dry eye syndrome; osteopoikilosis in his left hand; and hypertension and hyperlipidemia. (AR at 34.) The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 34.)

The ALJ also found that Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that he could "only

occasionally stoop, kneel, crouch, crawl, or climb ramps or stairs.  (AR at 35.)  The ALJ further found that Plaintiff "can frequently balance," but that "[h]e can never climb ladders, ropes, or scaffolds."  (AR at 35.)  Also, the ALJ found that Plaintiff "has an unlimited ability to push or pull within his lifting limitations" but that "[h]e must avoid concentrated exposure to extreme cold and hazards[,] such as dangerous machinery or unprotected heights."  (AR at 35.)  In support of his finding regarding Plaintiff's RFC, the ALJ relied on the medical evidence contained in the record, Plaintiff's own testimony provided during the hearing, and the medical opinions of Dr. Anthony LoGalbo, M.D. (a state agency medical consultant) and Dr. Gurcharan Singh, M.D. (a regional medical consultant).  (AR at 35-41.)

Lastly, the ALJ found that Plaintiff could not perform any of his past relevant work because they are all "medium exertional level jobs."  (AR at 41.)  However, the ALJ found that, "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  (AR at 42.)  Based on the vocational parameters provided by the ALJ, the vocational expert testified that Plaintiff could be employed as an assembler of small products (420,200 jobs in the national economy, 538 jobs in the regional economy) or a bench assembler (180,800 jobs in the national economy, 110 jobs in the regional economy).  (AR at 62-63.)  Thus, the ALJ concluded that Plaintiff was not disabled, as that term is defined in sections 216(i) and 223(d) of the Social Security Act.  (AR at 43.)

On October 4, 2013, Plaintiff requested that the Appeals Council review the ALJ's decision.  (AR at 22.)  On May 6, 2015, the Appeals Council denied Plaintiff's request for review.  (AR at 1-4.)  Thus, the ALJ's decision stands as the Social Security Administration's final decision for purposes of appeal.  *See Blea v. Barnhart,* 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff filed the current action on June 29, 2015.  (Doc. # 1.)

## II. STANDARD OF REVIEW

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied the correct legal standards."  *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938).  "Substantial evidence is more than a scintilla, but less than a preponderance . . . ."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987).

In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's."  *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation marks and

citation omitted). Also, the Court "defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

### III. ANALYSIS

A claimant is "disabled" under Title II of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled and, therefore, entitled to benefits. 20 C.F.R. § 404.1520.

Step one assesses whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Step two assesses whether the claimant has a "severe impairment," which is defined as an impairment or combination of impairments that "significantly limits [his or her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Step three assesses whether the claimant's impairment(s) "meets or equals" one of the "listed impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Step four assesses the claimant's RFC, which is a measure of what activities the claimant is able to accomplish despite his or her impairment(s), and whether claimant can perform any of his or her "past relevant work." 20 C.F.R. § 404.1520(e). Finally, step five assesses whether the claimant can perform any other work taking into account the measured RFC. 20 C.F.R. § 404.1520(g).

### A. Whether the ALJ failed to properly consider the combined effect of all of Plaintiff's severe and nonsevere impairments at step three

Plaintiff argues that the ALJ's analysis is flawed because it "does not reflect proper consideration of the combined effect of all of [Plaintiff's] severe and nonsevere impairments." (Doc. # 13 at 11.) Instead, according to Plaintiff, "the ALJ evaluated each of [Plaintiff's] impairments independently at step two and step three." (Doc. # 13 at 11.) In support of this argument, Plaintiff cites *Salazar v. Barnhart*, 468 F.3d 615 (10th Cir. 2006), *Langley v. Barnhart*, 373 F.3d 1116 (10th Cir. 2004), Social Security Rulings 85-28 and 96-3p, and an example provided by the Social Security Administration in section DI 24505.015 of its Program Operations Manual System.

More specifically, Plaintiff argues that he "presented clinical findings that would [have] supported a conclusion that his combined impairments medically equals, for example, Listing 1.04, in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Doc. # 13 at 12.) Plaintiff argues that the following evidence, when "viewed in light of [his] uncontroverted medically determinable impairments, is likely to result in the conclusion that he is presumptively disabled at step three":

> The 2013 MRIs revealed that [Plaintiff] had severe thoracic and lumbar stenosis with bulging discs and extrusions. That evidence showed that at the T9-10 level, there was a 'severe degree of central canal stenosis with significant compression' along the spinal cord (Tr. 430). The lumbar findings showed 'a severe degree of central canal stenosis with effacement' at L3-4, 'marked bilateral facet arthrosis,' and 'significant compression at L5-S1' with compression on the S1 nerve root.

(Doc. # 13 at 13.)

In response, the Commissioner argues that the Court "need not tackle Plaintiff's contentions because the Supreme Court has explained that an error in articulation at step three is harmless where the ALJ proceeds to the other steps of the analysis. (Doc. # 14 at 10.) In support of this assertion, the Commissioner cites *Sullivan v. Zebley*, 493 U.S. 521 (1990). The Commissioner also argues that the Tenth Circuit has found that "an ALJ's failure to discuss evidence at step three was 'harmless in light of the ALJ's findings at subsequent steps of the disability analysis'" because "the subsequent RFC 'finding[s] negate[ ] the possibility of any finding that [the claimant] is conclusively disabled at step three.'" (Doc. # 14 at 10-11) (alterations in original). In support of this assertion, the Commissioner cites *Duncan v. Colvin*, 608 F. App'x 566 (10th Cir. 2015) (unpublished). The Commissioner argues that, in the present matter, any error at step three "was ameliorated by the ALJ's cogent findings at steps four and five." (Doc. # 14 at 11.)

With regard to the substance of Plaintiff's argument, the Commissioner points out that "[t]he ALJ specifically found that Plaintiff did not have 'an impairment *or combination of impairments that meets* or medically equals the severity of the listed impairment.'" (Doc. # 14 at 11 (emphasis in the Commissioner's brief).) The Commissioner further argues that the ALJ's organization of his analysis around each specific impairment "does not undermine" the ALJ's assertion that he considered Plaintiff's impairments in combination, "especially where Plaintiff has not identified what evidence equals a listing when considered in combination." (Doc. # 14 at 11.) With regard to Plaintiff's specific contention that the evidence supports a finding that his

combination of impairments meets or medically equals the severity of Listing 1.04, the Commissioner argues that all of the criteria of that listing are not satisfied because "Plaintiff offered no evidence that demonstrated or equaled a limitation of motion, motor loss, and sensory or reflex loss, or a positive straight leg raise." (Doc. # 14 at 12.) The Commissioner also argues that "the record explicitly refutes a contention that his condition meets or equals a listing" because Plaintiff's "physical exams have demonstrated full range of motion in his spine (AR 272, 316, 335, 347, 389, 405, 415, 424)," "normal motor functioning (AR 217, 248, 283, 334, 411)," consistently normal gait (AR 36, 253, 334, 346, 388, 405, 415; *but see* AR 330 (noting "waddling gait"), and consistently negative straight-leg raise (SLR) testing (AR 37, 228, 330, 422, 424). (Doc. # 14 at 12-13.)

As stated above, at step three, "the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quotation marks and citation omitted). If the ALJ finds that a claimant's impairment(s) does not meet or medically equal a listed impairment, then the ALJ is "required to discuss the evidence and explain why he [or she] found that [the applicant] was not disabled at step three." *Id*.

Listing 1.04 is met if a "[d]isorder of the spine" results in "compromise of a nerve root (including the cauda equina) or the spinal cord" and at least one of the following:

> A. Evidence of nerve root compression characterized by nuero-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or

> reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1.

In his discussion of Listing 1.04, the ALJ stated the following:

> The degenerative disc disease and facet joint arthropathy in the claimant's thoracic spine does not meet or medically equal the requirements of section 1.04. The medical evidence does not establish that he exhibits evidence of having nerve root compression in his thoracic spine with neuro-anatomic distribution of pain, limitations in the range of motion of his thoracic spine, and motor loss accompanied by reflex or sensory loss. The medical evidence does not establish that he has spinal arachnoiditis in his thoracic spine.
>
> The degenerative disc disease and fact joint arthropathy in the claimant's lumbar spine does not meet or medically equal the requirements of section 1.04. The medical evidence does not establish that he exhibits evidence of having nerve root compression in his lumbar spine with neuro-anatomic distribution of pain, limitations in the range of motion of his lumbar spine, and motor loss accompanied by reflex and sensory loss. He does not have positive straight leg raising tests. The medical evidence does not

11

>establish that he has spinal arachnoiditis in his lumbar spine
>or lumbar spinal stenosis resulting in pseudoclaudication.

(AR at 34.)

The record shows that on March 15, 2013, Plaintiff underwent an MRI of this thoracic and lumbar spine. (AR at 429-432.) The MRI of the thoracic spine revealed "severe central canal stenosis at T9-T10 and T10-T11 due to moderate-sized disc bulges/extrusions," which causes "significant compression of the spinal cord." (AR at 430.) The MRI of the lumbar spine revealed that "[a]t L3-L4 there is severe central canal stenosis with some redundancy of the nerve root proximal to the level of the stenosis" and that "[a]t L5-S1 there is significant compression of the bilateral traversing S1 nerve root single in the lateral recess due to the combination of facet arthrosis and the large disc bulge." (AR at 432.)

While Plaintiff is correct that this evidence supports a finding that some of the criteria set forth in Listing 1.04 are met (namely, compression of the spinal cord), Plaintiff's argument fails because he does not identify any evidence in the record that would satisfy the remaining elements. For example, after summarizing the results of his March 15, 2013 MRI, Plaintiff states that this "evidence, viewed in light of [his] uncontroverted medically determinable impairments, is likely to result in the conclusion that he is presumptively disabled at step three." (Doc. # 13 at 13.) However, Plaintiff fails to identify any evidence in the record that would support a finding that he experiences a "limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and

supine)." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04.  Plaintiff does not allege that he experiences any of these problems, nor does he identify which of his impairments affect or relate in any way to these problems.  In fact, the Commissioner points to evidence showing that Plaintiff has full range of motion in his spine, normal motor functioning, normal gait, and consistently negative straight-leg raises.  (Doc. # 14 at 12-13.)  Thus, Plaintiff has failed to demonstrate that the ALJ committed error at step three when he determined that Plaintiff's impairments, either singly or in combination, do not meet or medically equal one of the listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Plaintiff also argues that the ALJ's reliance on the medical opinions of Doctor LoGalbo and Doctor Singh was insufficient because "[n]either physician had examined [Plaintiff], nor had the opportunity to review the 2013 MRI reports."  (Doc. # 13 at 13.)  Plaintiff asserts that "the ALJ should have sought an updated review about the medical severity of [Plaintiff's] combined impairments, either by obtaining opinions from his treating sources, from a medical expert, or at [sic] obtained an updated State agency opinion based on review of all the records."  (Doc. # 13 at 14.)  In support of this argument, Plaintiff cites 20 C.F.R. § 404.1520b, Social Security Ruling 96-6p, and the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") section I-2-5-32.  Plaintiff's argument is unpersuasive, however, because the authorities cited do not support Plaintiff's position.

20 C.F.R. § 404.1520b, titled "How we consider evidence," describes generally how the Commissioner considers evidence and what steps the Commissioner takes if

13

he or she determines that the evidence in a particular case is insufficient or inconsistent. That section begins, "After we review all of the evidence relevant to your claim, including medical opinions (see § 404.1527), we make findings about what the evidence shows. In some situations, we may not be able to make these findings because the evidence in your case is insufficient or inconsistent." 20 C.F.R. § 404.1520b. Plaintiff does not argue that the ALJ in this matter should have determined that "all of the evidence relevant to [Plaintiff's] claim" was insufficient or inconsistent. In addition, 20 C.F.R. § 404.1520b does not specifically create the requirement that, in certain circumstances, an ALJ must seek an updated review of the severity of a claimant's impairments. Therefore, 20 C.F.R. § 404.1520b does not provide support Plaintiff's argument.

    Social Security Ruling 96-6p provides that the ALJ

> must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> When no additional medical evidence is received, but in the opinion of the administrative law judge or Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Plaintiff does not allege, nor does the record demonstrate, that, in the ALJ's opinion, Plaintiff's symptoms, signs, and laboratory findings "suggest that a judgment of

equivalence may be reasonable." In addition, Plaintiff does not allege, nor does the record demonstrate, that additional medical evidence was received that, in the opinion of the ALJ, "may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." Therefore, Social Security Ruling 96-6p does not provide support for Plaintiff's argument.

HALLEX section I-2-5-32, which addresses medical experts generally, defines who medical experts are, describes the purposes of their opinions, and provides the ALJ with special considerations when using a medical expert. HALLEX section I-2-5-32 does not discuss any requirement that an ALJ must obtain an "updated review" in certain circumstances.

Therefore, nothing in the materials Plaintiff cites provides any support for his assertion that the ALJ was required to obtain an "updated review about the medical severity of [Plaintiff's] combined impairments."

### B. Whether the ALJ's evaluation of the credibility of Plaintiff's subjective complaints is supported by substantial evidence

Plaintiff argues that the ALJ found Plaintiff's subjective reports not credible "because [Plaintiff] had worked in the past despite some of his medical conditions." (Doc. # 13 at 14.) Plaintiff argues that, in making this finding, the ALJ "failed to take the worsening of [Plaintiff's] conditions into consideration." (Doc. # 13 at 15.)

In his written opinion, the ALJ found, after considering the evidence, that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, his statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely credible." (AR at 39.) The ALJ then stated that he reached this conclusion for five reasons: (1) "the medical evidence does not support [Plaintiff's] allegation of total disability"; (2) Plaintiff testified that his primary impediment to working is his left groin and left hip area pain, but "the medical evidence indicates that the nerve blocks have provided [Plaintiff] with complete relief from his left thigh pain for five to six weeks after the injections and have reduced his level of pain overall"; (3) Plaintiff originally claimed that he became disabled in 2008, but he testified that he stopped working in 2008 so that he could complete his education and study abroad; (4) the evidence indicates that Plaintiff has had intermittent episodes of left thigh pain for a number of years but that this pain did not preclude him from working in the past; and (5) the record does not contain any medical source opinions that indicate that Plaintiff has disabling work-related limitations due to his impairments. (AR at 39-41.)

Therefore, contrary to Plaintiff's assertion, the ALJ's credibility finding is based on substantially more than just a finding that Plaintiff "had worked in the past despite some of his medical conditions." In addition, Plaintiff does not challenge any of the other four reasons given by the ALJ to support his finding that Plaintiff's statements regarding the intensity, persistence, and limiting effect of his symptoms "are not entirely credible." The Court finds that Plaintiff has failed to show that the ALJ's credibility determination is not support by substantial evidence.

### C. Whether the ALJ's step five determination is supported by substantial evidence

Lastly, Plaintiff argues that the ALJ's determination at step five is not supported by substantial evidence. (Doc. # 13 at 15.) In support of this argument, Plaintiff relies primarily on his prior arguments. (Doc. # 13 at 16 ("Because the ALJ's findings lacked substantial evidence for the reasons discussed above, the Commissioner's step five burden was not met.").) For example, Plaintiff argues that "the evidence shows that [his] combined impairments preclude any gainful activity, and that he should be found presumptively disabled at step three." (Doc. # 13 at 16.) However, for the reasons discussed above, the Court finds Plaintiff's previous arguments unpersuasive.

Plaintiff also argues that the testimony elicited from the vocational expert by the ALJ did not "relate with precision all of [Plaintiff's] impairments." (Doc. # 13 at 16 (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)).) For example, Plaintiff argues that the "medical evidence supported a finding that [Plaintiff] must be able to make postural shifts, at will." (Doc. # 13 at 16.) Plaintiff is correct that the RFC analysis performed by Dr. LoGalbo on September 26, 2012, stated that Plaintiff's only "exertional limitation[ ]" is the need to perform "postural shifts as desired for comfort." (AR at 72.) However, Dr. LoGalbo's analysis does not support the hypothetical limitations that were provided to the vocational expert at Plaintiff's request. Specifically, those hypothetical limitations included: "Sit 20 to 30 minutes. Stand 15 to 20 minutes. Walk three blocks, with an eight-pound limit in lifting and carrying." (AR at 63.) Contrary to Plaintiff's argument, Dr. LoGalbo's analysis does not support the hypothetical "sit/stand duration"

limitation because "postural shifts as desired for comfort" does not necessarily mean that Plaintiff can sit for only "20 to 30 minutes" and stand for only "15 to 20 minutes."

Lastly, Plaintiff argues that the 648 jobs available to Plaintiff in the regional economy does not constitute a "significant number." (Doc. # 13 at 17.) Plaintiff's argument is unpersuasive, however, because he misapprehends the law. The standard is not whether there are a significant number of jobs only in the regional economy; but rather, whether there are a significant number of jobs in the regional or national economy. *See* 42 U.S.C. § 423(d)(2)(A) ("An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."). Plaintiff does not argue, and the Court does not find, that the number of jobs available to Plaintiff in the national economy as found by the ALJ (601,000 jobs) constitutes an insignificant number of jobs.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the August 8, 2013 written decision of the administrative law judge is AFFIRMED.

DATED: April 13, 2016

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge